# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JULY SESSION, 1997

FILED

September 12, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **TYRONE HENDERSON,** | **)** | **C.C.A. NO. 02C01-9610-CR-00376** |
| | **)** | |
| Appellant, | **)** | |
| | **)** | |
| | **)** | **SHELBY COUNTY** |
| **VS.** | **)** | |
| | **)** | **HON. JOHN P. COLTON, JR.** |
| **STATE OF TENNESSEE,** | **)** | **JUDGE** |
| | **)** | |
| Appellee. | **)** | (Post-Conviction) |

## ON APPEAL FROM THE JUDGMENT OF THE CRIMINAL COURT OF SHELBY COUNTY

FOR THE APPELLANT:

WAYNE CHASTAIN
66 Monroe, Suite 804
Memphis, TN 38103

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

ELIZABETH T. RYAN
Assistant Attorney General
425 5th Avenue North
Nashville, TN 37243

JOHN W. PIEROTTI
District Attorney General

DAWN DORAN
Assistant District Attorney General
Criminal Justice Complex, Suite 301
201 Poplar Street
Memphis, TN 38103

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Petitioner, Tyrone Henderson, appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure from the trial court's denial of his petition for post-conviction relief. On January 7 and 8, 1993, the Petitioner pleaded guilty to one count of aggravated assault, one count of sale of a controlled substance (cocaine), and five counts of aggravated robbery.[1] As specified in the negotiated plea agreement, he was sentenced to six years for the aggravated assault, twelve years for the sale of cocaine, twelve years each for four counts of aggravated robbery and thirteen years for one count of aggravated robbery. The thirteen-year sentence was ordered to run consecutively to the other sentences, all of which were to run concurrently, resulting in an effective term of imprisonment of twenty-five years with the Department of Correction. The Petitioner was classified as a Range I standard offender. He filed a pro se petition for post-conviction relief on September 14, 1995, which was amended with the assistance of counsel on February 1, 1996. In his petition for post-conviction relief, the Petitioner argues that he was denied effective assistance of counsel at his guilty plea proceedings for a number of reasons. The trial court conducted an evidentiary hearing on April 25, 1996, and after considering the evidence, issued an order denying the petition on July 10, 1996. We affirm the judgment of the trial court.

The transcript of the January 7, 1993, guilty plea proceeding indicates that the aggravated assault and the aggravated robberies occurred in January of

---

[1] Tenn. Code Ann. §§ 39-13-102, 39-17-417, and 39-13-402.

1992. The offenses stemmed from the robbery of several businesses in Shelby County by the Petitioner and a codefendant. During one of the robberies, a gun was discharged, wounding an employee of the business. The police investigation eventually led authorities to the codefendant, who implicated the Petitioner in the crimes. Victims of the crimes identified the Petitioner from photo arrays. In addition, a video tape of one of the robberies showed the Petitioner. Upon questioning by police, the Petitioner confessed to the crimes. He negotiated a plea agreement with the district attorney general's office and, on January 7, 1993, pleaded guilty to the crimes.

On the following day, January 8, 1993, the Petitioner pleaded guilty to one count of sale of a controlled substance, namely, cocaine. The transcript of that guilty plea proceeding is not included in the record on appeal. As a result, the circumstances surrounding that offense are unclear. All we can glean from the record is that the offense allegedly occurred on February 28, 1992, in Shelby County.

On September 14, 1995, the Petitioner filed a pro se petition for post-conviction relief, arguing that defense counsel at the guilty plea proceedings was ineffective. Counsel was appointed and amended the petition on February 1, 1996. Through the amended petition, the Petitioner argued that his attorney at the guilty plea proceedings, Tom Pera, rendered ineffective assistance of counsel in a number of ways:

(1) That counsel did not fully advise the Petitioner of his constitutional rights;
(2) that counsel did not ensure that the Petitioner fully understood the consequences of giving up those rights by pleading guilty;
(3) that counsel failed to obtain expert witnesses for the defense;

(4) that counsel failed to obtain investigative services for the defense;
(5) that counsel failed to file certain motions beneficial to the defense;
(6) that counsel failed to investigate evidence supporting the Petitioner's innocence;
(7) that counsel failed to meet adequately with the Petitioner to discuss the case;
(8) that counsel failed to explain the concurrent and consecutive nature of the sentences; and,
(9) that counsel failed to explain that the convictions could be used against the Petitioner in the future.

Through the amended petition, the Petitioner also argued that his convictions violated double jeopardy principles in that he also received federal convictions stemming from the robberies supporting his state convictions. The trial court found that the double jeopardy issue lacked merit, and the issue was not pursued on appeal to this Court. Accordingly, we will not address that issue in this opinion.

The trial court conducted an evidentiary hearing on the petition for post-conviction relief on April 25, 1996. At the hearing, the Petitioner testified that he pleaded guilty because he did not understand the nature of the charges, the level of proof, and his constitutional rights. In particular, he testified that he did not understand that he had a constitutional right to a jury trial. He also stated that he pleaded guilty because he was scared and that defense counsel, Tom Pera, told him that he could receive the death penalty if he did not accept the plea agreement. He had heard that the trial judge handling his case was "tough" and feared that he would be sentenced to death.

From his recollection, the Petitioner recalled meeting with defense counsel only once. According to the Petitioner, defense counsel never asked him if he

had any witnesses to support his innocence. As a result, he did not inform defense counsel that his mother would have served as an alibi witness for some of the crimes of which he stood accused. In addition, he stated that he confessed to the crimes because he was scared and did not understand the charges. Defense counsel filed a motion to suppress the confession, but it was never acted upon according to the Petitioner.

The Petitioner testified further that he did not complete the eighth grade. Moreover, he was hit by a car when he was five years old and suffered a head injury. As a result, he testified that his cognitive abilities are impaired and he sometimes has difficulty understanding what others tell him.

On cross-examination, the Petitioner admitted that he had pleaded guilty to numerous charges in the past. He stated that several different attorneys had represented him on those cases, but none of them had ever explained to him that he had a constitutional right to a jury trial.

The only other witness to testify at the post-conviction hearing was the Petitioner's attorney from the guilty plea proceedings, Tom Pera. Pera testified that he had worked as a defense attorney for twenty-two years, handling cases involving everything from misdemeanors through first-degree murder. During that time, he handled approximately one hundred thirty to two hundred jury trials and more than one thousand guilty pleas. After having reviewed his case file, he testified that he spoke with the Petitioner four times about his charges. The level of proof against the Petitioner was formidable, including identification by the victims, a videotape of one of the robberies showing him, his codefendant's

implication of him in the crimes, and his own confessions. In Pera's opinion, there was the potential for a conviction on each of the charges against the Petitioner. Pera spoke with the Petitioner's mother and had no recollection of her being a potential witness. Pera confirmed that the Petitioner never informed him that his mother would serve as an alibi witness.

Given the level of proof against the Petitioner, Pera began to explore plea options with the district attorney general's office. The prosecutor initially offered a sentence of thirty years. Pera negotiated with the prosecutor and they eventually agreed to a twenty-five year sentence. Pera requested a consecutive sentence at Range I rather than concurrent sentences at Range II or III because the Petitioner would have to serve less actual time before becoming eligible for parole. Pera did file a motion to suppress some of the evidence against the Petitioner, but informed him that it was the practice of the district attorney general's office to revoke any plea offers if the motion to suppress was heard and denied. After considering his options, the Petitioner decided to plead guilty before the motion to suppress was heard.

Pera testified that it was his usual practice to explain constitutional rights and the consequences of pleading guilty to his clients. He did not recall any occasion in which the Petitioner did not seem to understand what they were discussing. Pera detected no indication of any mental illness or disability. If there had been any question about the Petitioner's mental state and comprehension ability, Pera stated that he would have requested an evaluation. Pera denied that he told the Petitioner that he could be sentenced to death for his crimes if he refused to plead guilty.

After considering the evidence presented at the post-conviction hearing, the trial court entered thorough, detailed findings of fact and conclusions of law. In short, the trial court did not find the Petitioner's testimony to be persuasive and instead accredited Tom Pera's testimony in all respects. The trial court found that Pera had fully advised the Petitioner of his constitutional rights and the consequences of pleading guilty.

With respect to the allegations that defense counsel was ineffective in failing to obtain expert witnesses and investigative services, presumably for the purpose of evaluating the Petitioner's mental functions, the trial court noted that Pera testified that if there had been any indication of a mental disability, he would have requested an evaluation. The trial court found that the Petitioner had not informed Pera of any mental disability and that the Petitioner did not appear to be suffering from a mental disability during his discussions with defense counsel. Accordingly, the trial court concluded that Pera's actions with regard to the Petitioner's mental functions were reasonable.

With respect to the allegations that defense counsel failed to develop a reasonable trial strategy, failed to file certain motions and failed to investigate evidence to support the Petitioner's innocence, the trial court noted that the evidence supporting the Petitioner's guilt was overwhelming. The trial court pointed out that Pera did file a motion for discovery and a motion to suppress. As far as evidence supporting the Petitioner's innocence, the trial court found that the only evidence suggested by the Petitioner at the post-conviction hearing was that his mother could have been an alibi witness. The trial court, however, found that the Petitioner did not inform Pera of that circumstance at the guilty plea

proceeding and that Pera's conversations with the Petitioner's mother demonstrated that she was not a potential alibi witness.

With respect to the allegations that defense counsel failed to meet adequately with the Petitioner, failed to explain the concurrent and consecutive nature of his sentences and failed to explain that the convictions could be used against him in the future, the trial court accredited Pera's testimony. The trial court found that Pera had met with the Petitioner four times and that their level of contact was reasonable. In addition, the trial court found that Pera had explained to the Petitioner the nature of his concurrent and consecutive sentences as well as the fact that his convictions could be used against him in the future.

As a result, the trial court concluded that Pera's representation fell within the range of competence demanded of attorneys in criminal cases. Given that Pera had provided effective assistance of counsel, the trial court concluded that the Petitioner had entered his guilty pleas knowingly, intelligently and voluntarily. The trial court therefore denied the petition for post-conviction relief. It is from the order of denial that the Petitioner now appeals.

In determining whether or not counsel provided effective assistance at trial, the court must decide whether or not counsel's performance was within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975). To succeed on a claim that his counsel was ineffective at trial, a petitioner bears the burden of showing that his counsel made errors so serious that he was not functioning as counsel as guaranteed under the

Sixth Amendment and that the deficient representation prejudiced the petitioner resulting in a failure to produce a reliable result.  Strickland v. Washington, 466 U.S. 668, 687, reh'g denied, 467 U.S. 1267 (1984); Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990).  To satisfy this second prong the petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding petitioner's guilt.  Strickland, 466 U.S. at 695.  This reasonable probability must be "sufficient to undermine confidence in the outcome."  Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When reviewing trial counsel's actions, this court should not use the benefit of hindsight to second-guess trial strategy and criticize counsel's tactics.  Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).  Counsel's alleged errors should be judged at the time it was made in light of all facts and circumstances.  Strickland, 466 U.S. at 690; see Cooper, 849 S.W.2d at 746.

This two part standard of measuring ineffective assistance of counsel also applies to claims arising out of the plea process.  Hill v. Lockhart, 474 U.S. 52 (1985).  The prejudice requirement is modified so that the petitioner "must show that there is a reasonable probability that, but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial."  Id. at 59.

We note that in post-conviction relief proceedings, the petitioner bears the burden of proving the allegations in his or her petition by clear and convincing evidence.  Tenn. Code Ann. § 40-30-210(f) (Supp. 1996).  Furthermore, the factual findings of the trial court in post-conviction hearings are conclusive on

appeal unless the evidence preponderates against them. See State v. Buford, 666 S.W.2d 473, 475 (Tenn. Crim. App. 1983).

Applying the Strickland standard to the case sub judice, we believe that the Petitioner has failed to establish that defense counsel's representation at the guilty plea proceedings was constitutionally deficient. The Petitioner testified at the post-conviction hearing that defense counsel failed to explain his constitutional rights and the consequences of pleading guilty, failed to investigate his mental functioning, failed to pursue evidence supporting his innocence, and failed to explain his sentences. In contrast, defense counsel Pera testified that he fully explained both the consequences of pleading guilty and constitutional rights, that he was unaware of any mental disability, that he investigated possible avenues of defense and found few given that the Petitioner had admitted guilt, and that he fully explained the nature of the sentences.

After hearing all of the evidence and evaluating credibility, the trial court accredited the testimony of the Petitioner's defense counsel, Tom Pera. Thus, the trial court found that the evidence did not support the Petitioner's allegations of ineffective assistance of counsel. With regard to the Petitioner's mental disability contention, the trial court noted that the only evidence of a disability was the Petitioner's bare allegation of such. The trial court found that this allegation was rebutted by Pera's testimony that he noticed no mental deficiency or lack of understanding on the part of the Petitioner at the guilty plea proceedings. This Court has previously held that without some indication of a mental disability, defense counsel is generally not ineffective for failing to request an examination. See State v. Kerley, 820 S.W.2d 753, 755 (Tenn. Crim. App. 1991). Of course,

the Petitioner could have presented testimony from other witnesses, particularly expert witnesses, detailing his mental condition. He chose not to do so.

The trial court was in a much better position to evaluate the credibility of the witnesses than this Court. The trial court found Tom Pera's testimony to be persuasive and therefore concluded that the Petitioner had not established that Pera's representation was constitutionally deficient. From the record before us, we cannot conclude that the evidence preponderates against the trial court's findings. This issue lacks merit.

We point out that, on appeal, the Petitioner has raised two additional issues which were not presented in his petition for post-conviction relief. The Petitioner argues that the trial court presiding over the guilty plea proceedings erred by failing to advise the Petitioner of his constitutional right against self-incrimination and that the trial judge erred by interjecting his intimidating personal feelings into the guilty plea proceedings. Because these issues were not presented in the petition for post-conviction relief, the trial court was unable to make a ruling with regard to them.

We believe that the Petitioner has waived consideration of these issues by this Court. In general, an appellant cannot change theories from the trial court to the appellate court. See State v. Matthews, 805 S.W.2d 776, 781 (Tenn. Crim. App. 1990); State v. Aucoin, 756 S.W.2d 705, 715 (Tenn. Crim. App. 1988). Waiver aside, we can only conclude that the Petitioner's additional issues are without merit.

The Petitioner contends that the trial court presiding over his guilty plea proceedings erred by failing to advise him of his constitutional right against self-incrimination. The transcript of the January 7, 1993, guilty plea proceeding is included in the record on appeal.[2] That transcript clearly reveals that the trial court advised the Petitioner of his constitutional right not to testify should he elect to proceed to trial. The Petitioner responded that he understood that right upon questioning by the trial court. Accordingly, this issue lacks merit.

The Petitioner also contends that the trial judge erred by interjecting his intimidating personal feelings into the guilty plea proceeding. In particular, he refers to the trial judge's questioning of him about gaining a considerable sum of money as a result of the robberies but nevertheless being represented by an appointed attorney. At one point, the trial judge stated, "I'll tell you, I'm sick and tired of paying somebody to represent you. That's my money. That's my money paying to represent you. That's my money paying your court costs, and I'm sick and tired of it." The Petitioner argues that the remarks were indicative of a judicial bias against him.

Regardless of the propriety of the trial judge's remarks, the Petitioner has not alleged that he was prejudiced in any way. The record indicates that the trial judge did in fact advise the Petitioner of his constitutional rights and the consequences of pleading guilty. Moreover, we note that sentencing was not left to the discretion of the trial judge, but rather was agreed upon in the plea agreement. The trial court accepted the Petitioner's guilty pleas and sentenced

---

[2] The transcript of the January 8, 1993, guilty plea proceeding involving the sale of cocaine conviction is not included in the record on appeal. As a result, we are unable to determine what transpired at that proceeding.

him according to the terms of the plea agreement. We fail to see any prejudice inuring to the Petitioner as a result of the challenged remarks made by the trial judge. Thus, we believe that this issue lacks merit.

For the reasons set forth in the discussion above, we conclude that the Petitioner has failed to demonstrate that the trial court erred in denying the petition for post-conviction relief. We therefore affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE

CONCUR:


_____
JOE B. JONES, PRESIDING JUDGE


_____
JOE G. RILEY, JUDGE