**Robert L. BRATTON, Plaintiff in Error,**

v.

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

Dec. 22, 1971.

Certiorari Denied by Supreme Court
March 6, 1972.

OPINION

OLIVER, Judge.

Robert L. Bratton, indigent and represented in this proceeding by the Shelby County Public Defender duly appointed, an inmate of the State Penitentiary where he is serving a sentence for first degree murder adjudged by the Criminal Court of Shelby County in 1945 upon his guilty plea while represented by retained counsel, has duly perfected his appeal to this Court from the judgment of that court dismissing his post-conviction petition after an evidentiary hearing and his amended petition without a hearing.

■ The petitioner's first two Assignments of Error are directed to the action of the trial court in dismissing his amended post-conviction petition without an evidentiary hearing. The material substance of the amended petition is that in July of 1965, after he had been at liberty on parole for about six years, the Board of Probation and Paroles revoked his parole without a hearing and without representation by counsel and returned him to custody to continue service of his sentence. The prayer of his amended petition is that he be released "on parole or otherwise" and for general relief. In his order granting the State's motion to strike the amended petition, the trial court found and held that the amended petition, complaining only of the action of the Board of Probation and Paroles in revoking the petitioner's parole, charged no infringement of any State or Federal constitutional right which would render his conviction and sentence void or voidable; and, further, that the courts are without jurisdiction to review the action of the Board of Probation and Paroles in revoking Bratton's parole, citing State ex rel. Wade v. Norvell, Tenn.Cr.App., 443 S.W. 2d 839, and Doyle v. Hampton, 207 Tenn. 399, 340 S.W.2d 891.

Unquestionably, the authorities cited by the author in the concurring opinion in *Wade* are controlling and determinative of

Hugh W. Stanton, Jr., Memphis, for plaintiff in error.

David M. Pack, Atty. Gen., Thomas E. Fox, Deputy Atty. Gen., Nashville, Thomas F. Graves, Asst. Dist. Atty. Gen., Memphis, for defendant in error.

the contentions advanced in Bratton's amended petition. In *Wade* we quoted T. C.A. § 40–3619 which vests the Board of Probation and Paroles with plenary and exclusive authority and jurisdiction in such matters, and provides, among other things, that the prisoner is entitled to appear at his parole revocation hearing "but not through counsel or others."

Moreover, relief is available under the Post-Conviction Procedure Act of this State only when the conviction or sentence attacked is void or voidable because of the abridgement of a right guaranteed by the State or Federal Constitution. T.C.A. § 40–3805. Patently, it is incontestable that the action of the State Board of Probation and Paroles in revoking a prisoner's parole has nothing whatever to do with his original conviction and sentence.

The trial judge was correct in summarily dismissing Bratton's amended petition.

■ We turn now to the original petition, in which the sum and substance of Bratton's complaint is that his guilty plea was involuntary and void because the trial judge did not ask him whether he understood the seriousness of the charges, the consequences of his guilty plea, and whether his guilty plea was entered freely and voluntarily and without coercion or incomprehension or fear, and did not advise him concerning the range of sentence he could receive; and because his retained trial counsel advised him he would receive the death penalty if he did not plead guilty, and he did not understand the charges or the consequences of his guilty plea or the range of punishment he could receive.

Following the evidentiary hearing, the trial judge filed a memorandum opinion in which he found that in entering his plea of guilty the petitioner relied on the advice of his attorney, and that his plea was not coerced or involuntary. Bratton's Assignments of Error here challenge the trial judge's findings and dismissal of his original petition. In considering these Assign-

ments, we are bound to adhere to the settled rule that the findings of the trial court, upon questions of fact, are conclusive unless this Court finds that the evidence preponderates against the lower court's judgment. State ex rel. Lawrence v. Henderson, Tenn.Cr.App., 433 S.W.2d 96; State ex rel. Jennings v. Henderson, Tenn.Cr.App., 443 S.W.2d 835; State ex rel. Leighton v. Henderson, Tenn.Cr.App., 448 S.W.2d 82; Myers v. State, Tenn.Cr. App., 462 S.W.2d 265.

Our Supreme Court has held many times that the findings of a trial judge in an oral hearing, who sees and hears the witnesses testify, and hears and considers conflicting testimony, will be given the weight of a jury verdict. Taylor v. State, 180 Tenn. 62, 171 S.W.2d 403; Atlas Powder Co. v. Leister, 197 Tenn. 491, 274 S.W.2d 364.

■ A careful review of the record of the evidentiary hearing demonstrates conclusively that Bratton knew exactly what he was doing when he entered his plea of guilty to first degree murder, and that he did so knowingly and understandingly after consultation with and upon the advice of his trial counsel; that he was 21 years old and had completed the seventh grade before dropping out of school; that while in the penitentiary he read some law in reference to guilty pleas and filing writs and drafted his own petition, with the help of others at the penitentiary; that he knew right from wrong and knew he was charged with the murder of Rebecca Augusta Nelson; that he knew there are varying degrees of homicide and that the punishment for first degree murder may include death in the electric chair; that he discussed the matter with his attorney who advised him that upon a plea of not guilty there was a possibility he might receive the death penalty, and that if he entered a plea of guilty his punishment would be 99 years in the penitentiary; that before he entered the courtroom on the day of his trial he knew in advance of the bargain to plead guilty and take 99 years in the penitentia-

ry, and thus avoid the possibility of the electric chair, and that he went to court that morning with the intention of pleading guilty; that the judge did not explain anything to him or ask him any questions; that a jury was present, and "there seemed to be some agreement with the jurors and my attorney, this is just in my mind"; that the judge "could've asked them had they reached a verdict," and that the judge then sentenced him to 99 years in the penitentiary.

The petitioner's mother testified in the petition hearing that she had discussed the petitioner's case with his attorney before coming into court; that this attorney was a competent lawyer and discussed his investigation of the case with her; that she knew about the negotiations with reference to her son entering a plea of guilty and receiving a sentence of 99 years in the penitentiary; and "I was pleased with Mr. Galloway because I was told he was one of the best criminal lawyers anywhere and I depended on, you know, his advice and everything."

The State introduced a duly certified copy of the Minutes of the Shelby County Criminal Court for November 14, 1945 showing that the defendant was present with his counsel and that upon his plea of guilty a jury was empaneled and returned a verdict finding him guilty of murder in the first degree "with mitigating circumstances and fix his punishment at not more than 99-years in the State Penitentiary at Nashville," and that the presiding judge entered judgment accordingly.

The able veteran trial judge who conducted the evidentiary hearing stated judicially that the judge who presided at Bratton's trial was an able jurist and that his retained trial attorney was an honorable member of the Bar, "and at that time and during many, many years of his practice at this Bar, he was one of the outstanding criminal lawyers in this part of the Country." The fact that he was represented by competent counsel at the time he entered

his guilty plea is "a factor which strongly militates against the conclusion that the plea was involuntary." Adams v. State, Tenn.Cr.App., 467 S.W.2d 841; Shepard and Owens v. Henderson, Tenn.Cr.App., 449 S.W.2d 726; Reed v. Henderson, 385 F.2d 995 (6th Cir. 1967).

The law is also settled and is no longer open to question that a guilty plea is not rendered involuntary by the fact that the accused is faced with an election between a possible death sentence on a plea of not guilty and a lesser sentence upon a guilty plea. Shepard v. Henderson, supra; State ex rel. Wyatt v. Henderson, Tenn. Cr.App., 453 S.W.2d 434; Adams v. State, Tenn.Cr.App., 467 S.W.2d 841; Beaty v. Neil, Tenn.Cr.App., 467 S.W.2d 844; Parker v. North Carolina, 397 U.S. 790, 90 S. Ct. 1458, 25 L.Ed.2d 785; Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L. Ed.2d 747.

The burden of proving his allegations attacking the validity of his conviction was on the petitioner. State ex rel. Lawrence v. Henderson, supra; Morgan v. State, Tenn.Cr.App., 445 S.W.2d 477; Shepard v. Henderson, supra; State ex rel. Leighton v. Henderson, supra. He has failed to carry that burden. The evidence does not preponderate against the findings and judgment of the trial court.

He has also failed to take into account the legal effect of his guilty plea. A guilty-plea conviction is based entirely upon the plea. Such a plea constitutes a conviction in and of itself and is conclusive. Beaty v. Neil, supra; Adams v. State, supra; Shepard v. Henderson, supra. It is a conviction of the highest order. Adams v. State, supra; 4 Wharton's Criminal Law and Procedure §§ 1900, 1901, 2247.

But this is not all. Unquestionably the law is now settled that when a defendant is represented by privately retained counsel, no "State-action" is involved, and the actions and/or non-action

of such private counsel must be imputed to the defendant and not to the State and he is bound thereby, absent any objection made to the court. The Fourteenth Amendment to the Constitution of the United States is directed at State action and not at the action of private individuals. Morgan v. State, supra. In addition to the authorities cited in *Morgan*, see also: State ex rel. Donehue v. Russell, 221 Tenn. 609, 429 S.W.2d 818; State ex rel. Richmond v. Henderson, 222 Tenn. 597, 439 S.W.2d 263; State ex rel. Gann v. Henderson, 221 Tenn. 209, 425 S.W.2d 616; State ex rel. Johnson v. Heer, 219 Tenn. 604, 412 S.W.2d 218; Carvin v. State, Tenn.Cr.App., 452 S.W.2d 681; Beaty v. Neil, supra.

In Richmond v. Henderson, supra, the Supreme Court of this State made the following statements—very appropriate here:

> " 'Petitioner's rights, if any, flow from the federal constitutionally guaranteed right to counsel. Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940). So, while an allegation of affirmative misconduct superficially excites more judicial interest and investigation, still, the question remains whether under the facts there has been a denial of federal due process by ineffective representation; representation of the kind resulting in a void judgment.

> " 'The standard applied by the overwhelming majority of federal courts in considering this question is stated as follows:

>> "Incompetency of counsel such as to be a denial of due process and effective representation by counsel must be such as to make the trial a farce, sham, or mockery of justice."

> \*      \*      \*      \*      \*      \*

> " 'This rule has been applied to any number of situations arising in a criminal case, including that situation involving the advice or urging of defense counsel for the defendant to enter a plea of guilty. *In cases in which this exercise of judgment by counsel (that of urging a defendant to enter a plea of guilty) has been attacked, it has uniformly been held that this is not a ground for invalidating the judgment.'* " *Citing cases*. (Emphasis supplied). Beaty v. Neil, supra.

■ But yet another obstacle stands in the petitioner's way. This record shows that both the original trial judge and his retained trial counsel are now deceased. He waited 25 years to raise any question about his guilty plea. In these circumstances, absent any showing that a transcript of the original trial proceedings is unavailable through any fault of the State, the guilty plea must be considered as having been made knowingly and voluntarily. Gallegos v. Cox, 358 F.2d 703 (10th Cir. 1966).

Lastly, there is no merit in the petitioner's insistence that the original trial judge did not advise with him concerning his guilty plea. As the court correctly held, the petitioner labored under no misapprehension or misunderstanding and was fully cognizant of the offense charged against him and intelligently and voluntarily entered a plea of guilty. The failure of the original trial judge to interrogate and advise him concerning his plea of guilty, if such was the fact, did not trench upon any of his constitutional rights. Milam v. State, Tenn.Cr.App., 449 S.W.2d 736.

The judgment of the trial court is affirmed.

WALKER, P. J., and MITCHELL, J., concur.